1A-5233 Horace Dunlap v. USA, oral argument, 15 minutes per side, Mr. Hawley for the appellant. Your honors, may it please the court, I'm Michael Hawley and I represent Mr. Horace Dunlap in this appeal. I'd like to reserve three minutes for rebuttal please. Now in 1996 the government chose to prosecute Mr. Dunlap for simply possessing a gun and ammunition and presumably it did so because he would clearly be subject to enhanced penalties under the Armed Career Criminal Act based on three prior convictions. I had two for drug convictions which counted and the third was obviously going to be a voluntary manslaughter conviction. That was obvious at the time because in 1993 this court, a case called Crum, it said that manslaughter satisfies the residual clause of the violent felony definition and in doing so it followed the logic of the Sentencing Commission that said basically if you've caused someone's death you've certainly been involved in a crime that presented a serious potential risk of injury. So that was 1996 and about 20 years later the Supreme Court struck down the residual clause in the Johnson case and so we're here today with a Johnson claim and there's two types of issues raised in this case due to the government's response. There's a substance of issues. Do his prior convictions now satisfy the violent felony definition nonetheless by satisfying the force clause? And then there's the the potter type of issues which are procedural issues. As for the substance, I mean the key principle is that when a sentencing judge, in order to comply with the Sixth Amendment, when the sentencing judge is looking back at a prior conviction and classifying it, that conviction is based on a plea, a guilty plea, all the judge can do is decide what the defendant necessarily must have admitted to sustain that Under the Harmed Career Criminal Act? The punishment in 1996? Everybody know that? In 1996, your honor? Now, whenever. It was clear from the sentencing transcript that Judge Higgins, the federal district court, was punishing him for his conduct and the judge could do that. The judge could, well I mean he, under Crum, he properly classified the manslaughter conviction as a violent felony, triggering the 15 to life, and then on top of that he said because of all this conduct which he saw, which he made, you know, found by preponderance the evidence that he'd engaged in these crimes, that he was going to give him an upward variance. And so sure, that conduct was part of the sentence, but the sentence, what allowed the judge to go above what would otherwise be the statutory maximum of 20 years, what allowed the judge to go above 20 years was his finding, which is based on the residual clause, that manslaughter counts as a violent felony. How do you know it was based on the residual clause? Your honor, there's, the only real proof on the issue is the background legal environment, right? Now, the courts after Potter and the other circuits have looked at this issue, and they look at three types of proof. There's the background legal environment, there's the sentencing record from the time, and then there's sometimes the judge who did the sentencing makes a statement presently, right? And in our case, the sentencing record was silent, the judge who did the sentencing didn't speak on it, and so all we have is the background legal environment. And that environment was this, that the Sixth Circuit had said that manslaughter satisfies the residual clause. And was it an enumerated felony at the time? It was not an enumerated felony under the, no, your honor, it would have to satisfy the force clause. So it was either force or residual? Yes, it was either force or residual, and the government has cited no case, I don't know of any case that said this Tennessee manslaughter counts, satisfies the force clause. So at that time, there were only two, there's two options, residual or force, and case law said residual. And I think when you add that to the presumption of regularity, which is that the judges know the law, and they apply it in making their decisions, that's exactly what this could satisfy the force clause now. Yes, your honor, and that's really the first and the substantive issue, and for that, you look back at the Shepard documents, obviously, and Mr. Dunlap pled down- Before we get to the Shepard documents, don't we have to decide, is it divisible, a divisible statute involved? Yes, your honor, we had argued that below, whether this manslaughter statute was divisible or indivisible, and we lost that issue, and I haven't briefed it. So is it divisible or indivisible, in your view? I mean, I've accepted the judge's ruling that it's divisible between voluntary manslaughter and involuntary manslaughter. That's the, I'm sorry, and that's the manslaughter statute that is related to the murder statute, right? And of course, under our argument, he could have been convicted under the liquor fatality statute, which also has the charge of secondary murder and voluntary manslaughter. So that was another option for which statute he was sentenced under, or convicted under. I don't know what could have been the basis of finding a liquor violation. Your honor, there's a Tennessee case law that, and well, I mean, the statute itself says if you give someone so much liquor that they drink it and they die, that that's voluntary manslaughter. The statute says it, there's case law finding someone guilty of doing that, and . . . But here we know what happened. Your honor . . . Didn't we just overlook the fact that we know exactly what happened with regard to the murder? Your honor, that's what the categorical approach requires the court to do. Just forget the truth and find the falsehood. Your honor, it's, I mean, this is what the categorical approach requires, your honor. It's because he's being, he was prosecutor of a gun crime, your honor, not for violent crimes. And Congress tells the court to go back and make findings about historical violence. And the court is restricted to the records. So we're restricted to the Shepard documents? Yes. And the district court wanted to look at the affidavit of conviction, is that correct? No, the affidavit of . . . Complaint, your honor. Complaint. That's, and that's the document that states the probable cause for the arrest, that justified his arrest. And someone had said, that someone else had said that he shot a man and caused him to die. And that was the basis of his arrest. There's no indictment in the record. So we don't know what statute he was indicted under. And on top of that, he didn't plead to the indictment. He didn't plead to murder, which is what he was charged with. We know that only from the judgment. The judgment says you're charged with murder, plead to voluntary manslaughter. Wasn't there some reference, I'm not saying that it makes a difference, but I thought there was some reference to the murder statute. Only on the top of the affidavit complaint, your honor. That's the only place it is. And the affidavit complaint just says, gives us the reasons why he was arrested. Okay, well let's assume that that's in fact what he was indicted for. Does that matter? It ultimately does not matter, your honor, because . . . He didn't plead to that. He did not plead to it. And I should have read this case before last night, but this court in the case that your honor Judge White authored, addresses this fact under Tennessee law. How . . . Is this common that there would be a judgment of conviction without a statute? You know, I think . . . I think it might be common that the judgment just simply writes in the name of the crime. I'm not so sure what they were doing in 1986, but I think that's entirely possible. So what are the Shepard documents that we have? In this case, for the manslaughter conviction, the only Shepard document is actually the judgment. I mean, a Shepard document could in theory be anything that shows what the defendant actually was convicted of. What he admitted to sustain the conviction. What he necessarily had to admit to sustain that conviction. And when you show what he was arrested for, it doesn't show what he had to admit later on down the road to sustain his conviction. He was arrested because someone said he shot a man. All we know is that he was charged with second degree murder, an indictment we don't know, under either of the two statutes. And then he didn't even have to plead. He didn't plead to murder. And he didn't have to plead to a lesser included offense. All he had to do was plead to a related offense. And any offense with the same victim would be a related offense. So we don't know which statute he pled under. And of course, if he pled under the liquor fatality statute, that does not satisfy the force clause. So if you can point me to the document and where in the document that document could show that the liquor provision could have been involved. The judgment, your honor? Yeah, where is the judgment that you're talking about? The judgment, I've got a copy. It's at 172, the record. 172, okay. Yeah, the civil case. 172? Oh, I'm sorry. That's the, I'm sorry. The judgment is the next page. It's 173. 173. And at the top it says, indicted, charged, murder, second degree. And it says a few lines down, defendant guilty of voluntary manslaughter. Can you keep your voice up? I'm sorry. I'm sorry. A few lines down it just says, pronounces the defendant guilty of voluntary manslaughter. Okay, and there's no statutory section number then? That's right. There's no statute. There's just the word voluntary manslaughter. And under the Tennessee Code and under Tennessee case law, that could have been for something much different than what the person alleged to have heard that he had done. And, again, the reason for this is because there's a Sixth Amendment violation if the sentencing judge goes outside of these records and makes factual findings about what happened, if the sentencing judge goes outside of it and for the purposes of triggering a different statutory penalty decides, yes, what really happened is that he shot the man. That's understandable when the judge decides how to exercise his discretion. But when deciding the statutory penalty range, the judge has to stick within these rules. Thank you. That's all. Thank you, Your Honor. May it please the Court, Cecil Van Devender on behalf of the United States. So I agree with Mr. Hawley that there are basically two issues here, sort of a broad issue about the proper legal framework for evaluating second or successive 2255s, and then sort of the narrower issue about what the documents in this particular case show. Before I kind of get into those and how they interact with each other, I'd like to start with three points I think are not really in serious dispute here, which are these. So first, Mr. Dunlap would still qualify as an armed career criminal under current law if his voluntary manslaughter conviction had been under the general Tennessee manslaughter statute or if his aggravated assault conviction had been under the B-1 or B-2 variant. The second is that in all likelihood had he actually been convicted under the liquor fatality statute or the failure to protect a child variant of aggravated assault, in all likelihood those would not have qualified as ACCA predicates even in 1996 when the residual clause was still in effect. And the third is that throughout this litigation, Mr. Dunlap has repeatedly conceded and acknowledged that in all likelihood his voluntary manslaughter conviction was under the general manslaughter statute, not under the liquor fatality statute. So the question then becomes, is it enough in a successive 2255? You say in all likelihood. Are you talking about in this proceeding he's admitted it? Yes, Your Honor, so far. Are you saying he waived it, that the issue is not in front of us? No, I think my point is, as Judge Merritt sort of alluded to, everyone kind of recognizes that. No, but there's no question that this is what the Supreme Court requires. In an initial sentencing hearing, perhaps, but in a second or successive 2255 that's not the case, Your Honor. So I think this Court addressed that directly in Potter and said it's not enough just to say, well, there's a theoretical possibility that I could have been convicted under a statute that wouldn't qualify today. Now the burden's on the government to disprove that definitively using only Shepard documents. Instead, the approach that Potter adopted. What case says that if you know that the person was sentenced under the residual clause, you conduct a different type of categorical approach analysis if it's a subsequent habeas petition? So Potter is one, but going back to – Potter doesn't say that. Potter says something else. Well, so if I understand your question correctly, is your question about basically how kind of the categorical approach works in the second or successive 2255? That's what I thought you were saying. Well, so there's initially this threshold question about whether – That's right. I agree with you on that. Okay. But I hear you saying that if you get past that threshold, you do a completely different analysis, categorical analysis if it's a second habeas petition. I'm wondering what case says that. That's not my position, Your Honor. So if, for example, there was no dispute that his conviction originally had been based solely on the residual clause, he would have shown Johnson error. The burden would then, I think, probably go back on the government to say, all right, let's present the Shepard document, see if this error can be deemed harmless because – Did you raise Potter below? So Potter came out 17 months after we filed our response to the 2255 and actually after the district court denied the 2255. So we didn't rely on it because it had not been issued yet. Did you seek to expand the certificate of appealability or anything? No, Your Honor. To be honest, I'm not familiar with that procedure from the perspective of an appellee. But if that's an option, it's one I'm not familiar with. So in any event, the question then becomes, is it enough to sort of point to a hypothetical possibility, which – and going back to your question earlier, Judge White, even in the appellant's brief before this court, Mr. Dunlap acknowledges that it's more likely than not that he was convicted under Tennessee general manslaughter statute, not the liquor fatality statute. But looking at the document that he pointed us to on 173, there is no indication which one it is, correct? Correct. Correct. And so, again, that kind of gets back to – Is there any other document that we should look at other than the judgment? So our position would be – well, I'll get back to Potter in a second, but in terms of kind of the narrow issue of what the documents here show, I think our position is although an affidavit of complaint is not itself a valid Shepard document, when you're talking about something that's outside of the modified categorical approach, that is you're not trying to see which subsection of an overbroad statute applied, you're not trying to look at conduct to see how the modified categorical approach applies, you're just trying to see what was the statute. Then the same strictures of Shepard don't apply. I'm sorry, what are you saying? So it's one thing when the conviction is under a statute and, say, the indictment and the judgment list the statutory section but don't list the subsection, right? Then there are certain Shepard documents that the court can look to to see whether a narrower subsection applied. That's not the issue here. The issue here is which statute applies, and if it was the general manslaughter statute, then you don't even have to get into the modified categorical approach. That's going to categorically qualify because the judgment says voluntary manslaughter. So the only question is, is this... So are you saying that you can look at the affidavit of complaint to see which statute applied? That's our contention. But where's the law that tells you why it's okay? So that would be, we cited the cases from the Fifth, Ninth, and I think Third Circuits that hold that. But, of course, our overarching position is you don't get there without first determining was this sentence originally based at least in part on the residual clause. Okay, I am confused by your answer because my question, to get back to it, was on page 173 we have a judgment. The judgment says voluntary manslaughter. It doesn't have any statutory provisions. What is any other Shepard document that we can look at? So in terms of Shepard documents... There is none, correct? So you've danced around it a lot, but that's the answer. There is no other Shepard qualifying document. That's correct, Your Honor. So... So the question then is somehow you're trying to get around Shepard qualifying documents. Well, our position is first you don't even have to get to those, and then second, are there exceptions to how Shepard applies when you're outside of the modified categorical approach and just trying to see which statutory section applied? Okay, and if you're trying to do that, is there a Supreme Court case that gives you an answer? Well, I do think that in this context a case like Park v. Raley is quite analogous. It's not in the specific context of Shepard in the Armed Career Criminal Act, but it makes the basic point that when someone comes along and tries to collaterally attack a judgment and says, well, there's not enough information in the record, there's a missing document here, that may suffice in an initial proceeding where someone raises a Boykin's claim on direct appeal, but when it's a collateral attack, the mere fact that there's a gap in the record doesn't automatically redound to the defendant's benefit. What about Welch? So Welch obviously held that Johnson applies retroactively, and I think one way in which Welch- But doesn't that mean that people are going to be raising these claims on 2255? Certainly. There's no question that he is entitled to raise a Johnson claim on 2255 and a second or successive, but Potter then sets out the procedure for what needs to be done to carry basically the burden that every post-conviction petitioner and indeed every civil litigant has, which is show his entitlement to relief by preponderance of the evidence. And again, it's undisputed that if he was convicted under the statute that, as a practical matter we all know applies, his conviction would be still a qualifying act of predicate today. He would not be entitled to relief. So the only question is can he show that there's even a realistic likelihood, more than a theoretical possibility, that the Liquor Fatality Statute actually served as the basis for his sentence. Now let me talk briefly about Crum, which- You've mentioned, before you get there, you've mentioned Potter. What about this Rains case? So Rains, for one, it was an initial 2255, whereas Potter is second or successive like this one. So to the extent that the court has to follow one or the other, I think Potter is, A, more directly on point, and B, as the earlier decided one, would take precedent over Rains. And I think there are aspects of Rains that also try to- that characterize part of Potter's reasoning as dicta. I think, in large degree, that's dicta within Rains. And it's also not an entirely persuasive reading or a fair reading of Potter. I mean, Potter's core reasoning is a person doesn't get placed back in the same position he would have been in at an initial sentencing hearing, where he raises a timely objection to his status as an armed career criminal, merely by filing a 2255 on the basis of Johnson. He has to make some sort of showing that the residual clause had an effect on his sentence. Now, Dunlap has attempted to do that here in his reply brief on appeal by citing Crum. And it's worth just kind of noting Crum was an unpublished decision from 26 years ago that's never been cited by any case, and that holds that the defendant waived his challenge to his manslaughter conviction as a violent felony, first of all, and then separately says, circuits having occasion to consider whether manslaughter constitutes a violent felony universally have concluded that it does. And then it cites a case from the Eighth Circuit saying, whether we focus on the elements of the crime or the offense's underlying facts, it qualifies. So even if somehow Judge Higgins had Crum in mind, which I think is quite unlikely, there's no reason to think that he had the residual clause specifically in mind. Now, some of the cases – When we look at what Judge Higgins did in the sentencing, what is your position as to whether Higgins referred to or relied on any one of the three possible clauses? So I think clearly there's no express reference to which clause applies, and of course that's partly because it was never objected to. Everyone agreed that he was clearly an armed career criminal. So our position is not that he definitively stated, I'm relying on the abuse of force clause. So there was total ambiguity. In other words, Judge Higgins just said you qualify as an armed career criminal under the violent felony. Right, said that he qualified because it wasn't disputed. Now, a lot of the cases that either take the opposite approach of Potter or have kind of taken issue with some of Potter's analysis have based that on, in large part, the sense that, well, it could be unfair to kind of infer silence in the record, draw that inference against the defendant, because the defendant may not have had an adequate incentive to contest the basis for his finding as an armed career criminal. That's not the case here. So here, again, had there been any plausible basis to argue that the liquor fatality statute was actually the one under which he was convicted, there was an incentive to raise it, because A, that probably would have meant that he wouldn't qualify as an armed career criminal at all, since it was effectively a strict liability statute. And B, the core issue at sentencing, which Judge Higgins gave notice of before and was front and center throughout the hearing, was whether the current offense of shooting Antonio Prim in the face was similar to his prior convictions. And so had Mr. Dunlap been able to say to the court, you know, Your Honor, I may have been originally charged with shooting someone, but it turned out actually that person died from a liquor overdose and that was the basis for my conviction, he had a strong incentive to raise that point then and didn't do so. I'd also just kind of make the broader point that, you know, if a petitioner raising a second or successive 2255 citing Johnson is sort of immediately and automatically placed back in the same position as someone at an initial sentencing hearing who is timely objected to his ACCA status, these cases are really going to turn on a fairly arbitrary, which is basically what Shepard documents are available 20, 30 years after the fact. So it's often the case that, you know, when the Shepard documents are at issue, the reality is, you know, as the Supreme Court pointed out in Park v. Railey, the government's not in a better position than the defendant to obtain those documents. In fact, the defendant is the only person present who was actually there at the time and actually knows what happened. And the reality is, when you're trying to go back and kind of cobble together this record, which may not actually have existed fully, what you're doing is basically kind of seeing if you can still track down the court reporter if he or she has retired. But aren't those problems problems also in the original sentencing if the crime of violence occurred a long time earlier, which we see a lot of the time? They certainly can be. But any time you add a decade, two decades to the fact, you're greatly reducing the likelihood that Shepard documents are going to be available. And so that's kind of another prudential reason why applying the same standard to a second or successive that you would apply in initial sentencing hearing I think doesn't make sense. But that, yeah, that's inherent in it. But that's also going to probably disappear over time, one would hope. Well, I'm not sure because, frankly, plea transcripts aren't kind of necessarily prepared contemporaneously. Usually it's not as though they're part of the record sitting in some file and the question is whether you can find them. Usually the question is does the court reporter, who may be sort of a private contractor, is she still alive? Is he or she still working? Can you find that person, pay them to go track down the tape in the archives, transcribe the hearing now? Why shouldn't the default rule be that if the record doesn't exist, there is no Shepard document that shows that a crime was a crime of violence and therefore this should not be added together to give the ACCA sentence when the statutory maximum for the offense of conviction here is just 20 years? I think the answer in Potter is that it really flips everything about post-conviction litigation on its head. It basically presumes constitutional error and requires the government to disprove that possibility using only documents that would have been admissible at the time. Again, that's the procedure at an initial sentence hearing, but under the very narrow exception that Congress has set out in second or successive 2255s, it's the petitioner who has to show that he is entitled to relief and must come forward with some evidence that his conviction was based on a statute that wouldn't qualify as an ACCA predicate. And you said Potter is the key for second or successive 2255s, but it is not the key for the original 2255. Is that right? That's certainly how Reigns read Potter.  Thank you. Thank you, Your Honor. I would start by addressing a question about the government waiving the Potter issues. They have waived those issues. Of course, they couldn't cite Potter, but they made none of these arguments below. They could have come into court and said, look, they have to prove something more. But the government treated this just as if it were a sentencing issue. Do these convictions, looking at the Shepard documents, do these convictions satisfy the force clause? That's how they argued it. They expressly said it's a question of law. They cited brand-new case law from 2016-2017 to say, let's go back and look at them using this new case law. When we asked for an evidentiary hearing, they said there should be no evidentiary hearing because it is a question of law is exactly what they said. So it's exactly the terms they wanted to litigate it on. And so they're too late with this issue. We cited a case called Davis, United States v. Davis, that held the government to waiver in a very similar circumstance. What about aggravated assault? What role does that play? Your Honor, the certificate is expanded to address it. It really falls under the same principles as the manslaughter conviction, Your Honor. You said the certificate what? If the certificate of appealability is expanded to include this assault issue, the government didn't make these arguments below, and they're making them now for the first time. But really the analysis is just the same as the manslaughter one. He pled down from a rape charge to aggravated assault, and all the judgment says is aggravated assault. So it could be any form of assault. And as this court's recent decision in Dillard from two weeks ago points out, some of those types of assault clearly aren't use of force type, and so it would not count. Should we remand this to the district court since the district court didn't decide the aggravated assault issue? Your Honor, that's strictly a legal question, and we think it's properly before the court. The court addresses that type of issue. There's a published case called Braden v. United States from I think 2016 where this court says, you know, we can address these categorical questions for the first time on appeal. We'll even accept Shepard documents for the first time on appeal to address it. So I think, you know, the issues are before the court, and they are legal issues. And as for the Potter issue, Potter is a much different case. Like for us, the background legal environment is favorable. That's what we have in our favor. That's the only evidence on the issue, and it's in our favor. In Potter, that legal background was against the defendant. Georgia burglary had been found to be a generic burglary, and no one had ever found it to satisfy the residual clause. And the judge expressly said he did not rely on the residual clause but instead the generic. So what is a related case in this case? Your Honor, it could be anything that's related, and I think one thing that would be for certain is if it's the same victim. And I cited a case called State v. York from Tennessee where it says clearly that a defendant is allowed to come in and plead to something he wasn't charged with. It doesn't have to be a lesser-included offense. It doesn't have to be related in that sense. It just has to be related. I mean, the practice in state court is very loose. Does it matter in this case that we're not talking about one statute that has different alternative elements? We're talking about two different murder charges? Your Honor, there's no authority for changing the Shepherd rules for that situation. I mean, I think that situation is probably common, and courts haven't talked about it because the Shepherd rule says look at the minimum that he had to admit to sustain this conviction. Thank you both. Thank you. We appreciate your argument, and the case will be submitted. And would the clerk adjourn court, please?